MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

JOHN N. GLANG (GUAMBN 94012)
Assistant United States Attorney

  150 Almaden Boulevard, Suite 900
  San Jose, California 95113
  Telephone: (408) 535-5084
  Fax: (408) 535-5066
  E-mail: John.Glang@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF SAMIR AZIZI | CR 14-90282-MISC-PSG <br><br> UNITED STATES' PRELIMINARY BRIEF RE UNAVAILABILTY OF BAIL IN EXTRADITION CASES |

The United States hereby opposes a request for bail in this extradition matter. As set forth in detail below, the Bail Reform Act does not apply to extradition proceedings, and bail is limited in extradition matters to only the most extraordinary "special circumstances," which are not present in this case.

## FACTUAL BACKGROUND

This case involves a request by the Government of Germany to the United States for the extradition of Samir Azizi. Germany seeks Azizi's extradition in a criminal case involving charges of tax evasion. Azizi is charged in Germany with a total of 89 counts alleging the crimes of (1) providing German tax authorities incorrect or incomplete statements about tax-relevant facts and (2) failing to inform German tax authorities about tax-relevant facts and acting contrary to duty, in violation of Section 370 of the Fiscal Code of Germany. Azizi was arrested on March 31, 2014 at San Francisco International

Airport following a flight from Dubai pursuant to a provisional arrest warrant that was issued by a U.S. Magistrate Judge in San Jose that same day.

## DISCUSSION

There is no constitutional or statutory right to bail in extradition proceedings. It is well established that bail is not generally available and that, if bail is granted, it is limited to the extraordinary case where unusual "special circumstances" exist. Unlike the situation for domestic crimes, "there is no presumption favoring bail [in international extradition]. The reverse is rather the case." *Matter of Extradition of Russell*, 805 F.2d 1215, 1216 (5th Cir. 1986), quoting *Beaulieu v. Hartigan*, 554 F.2d 1, 2 (1st Cir. 1977); *see also Matter of Requested Extradition of Kirby*, 106 F.3d 855, 858 (9th Cir. 1997) ("As the United States points out, this presumption against bail [in extradition proceedings] is contrary to the presumption that favors bail in domestic prosecutions.")

### A. No Constitutional or Statutory Right Exists to Bail In Extradition Proceedings

The fundamental rule is that no constitutional or statutory right to bail exists in extradition proceedings. As an initial matter, the Eighth Amendment to the Constitution requires only that bail, if granted, not be excessive. The federal statutes governing extradition procedures in the United States pursuant to treaties with other nations, 18 U.S.C. §§ 3184 et seq., do not provide for bail. Further, the Bail Reform Act and decisions involving pre-trial release apply only to criminal cases. *In re Extradition of Mironescu*, 296 F. Supp.2d 632, 634 (M.D.N.C.2003) ("Because an international extradition proceeding is not a criminal case, the Bail Reform Act . . . does not apply.")

### B. International Considerations Dictate Against Granting Bail

Although bail in extradition proceedings involves some of the same considerations as in ordinary criminal cases, it differs in one extremely significant respect: the international implications of a failure to deliver a fugitive. *In re Extradition of Molnar*, 182 F. Supp.2d 684, 686–87 (N.D. Ill. 2002) The reason for distinguishing release in extradition cases from federal criminal cases is that extradition cases involve an overriding interest in meeting treaty obligations. "As one court has put it, '[i]f the United States were to release a foreign fugitive pending extradition and the defendant absconded, the resulting diplomatic embarrassment would have an effect on foreign relations and the ability of the United States to obtain extradition of its fugitives.'" *United States v. Taitz*, 130 F.R.D. 442, 444 (S.D. Cal. 1990.)

Given the potentially serious consequences to the foreign relations of the United States and the inherent unreliability of fleeing felons, most courts will not grant bail to fugitives absent special circumstances. *See United States v. Williams*, 611 F.2d 914, 914–15 (1st Cir. 1979). Some courts characterize this reluctance as a presumption against bail for fugitives. *See, e.g., United States v. Messina*, 566 F. Supp.740, 742 (S.D.N.Y. 1983.) Regardless of the name of the policy, it derives from a single source: the interest of the United States in living up to its treaty obligations, coupled with the risk of flight inherent in all extradition cases, outweighs any factors that might be advanced in favor of release in all but the most unusual cases. Even if a fugitive is not considered a flight risk by the United States, the fugitive must establish the existence of "special circumstances" that would warrant his release. *Molnar*, 182 F. Supp.2d at 686 (citing *Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989).)

C. "Special Circumstances" are Required for a Fugitive to be Released on Bail

The general unavailability of release in extradition cases has been authoritatively settled by the United States Supreme Court since 1903. In *Wright v. Henkel*, 190 U.S. 40, 63 (1903), the Supreme Court held:

> Not only is there no statute providing for admission to bail in cases of foreign extradition, but § 5270 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 3591) is inconsistent with its allowance after committal, for it is there provided that, if he finds the evidence sufficient, the commissioner or judge "shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made."
>
> * * *
>
> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment. And the same reasons which induced the language used in the statute would seem generally applicable to release pending examination.

*Id.* at 61–62; *see also Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989) ("There is a presumption against bail in an extradition case and only 'special circumstances' will justify bail."); *see also Kirby*, 106 F.3d at 858. "Special circumstances" are "'only [] the most pressing circumstances, and

when the requirements of justice are absolutely peremptory.'" *United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986), quoting *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909) (L. Hand, J.)  Despite the age of the *Wright* decision, it still provides the standard for admission to bail pending extradition.  Even though laws have been updated and procedures re-codified since 1903, there still is no statute that admits an extraditee to bail, and the requirement of a showing of "special circumstances" is still mandated by *Wright* and its progeny.  *See* 18 U.S.C. § 3181 et seq.  The "special circumstances" doctrine creates a presumption contrary to the presumption operating in domestic prosecutions where, as noted above, pre-trial bail is available.  *Beaulieu*, 554 F.2d at 2 (unlike "domestic crimes, there is no presumption favoring bail.  The reverse is rather the case.")  Case law establishes that findings of "special circumstances" are limited to extraordinary and rare situations, or, in the words of Judge Learned Hand, "the most pressing circumstances and when the requirements of justice are absolutely peremptory."  *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909.)  The Ninth Circuit underscored the principle that fugitives arrested in connection with foreign extradition requests should be denied bail absent "special circumstances."  *United States v. Smyth*, 976 F.2d 1535, 1535–36 (9th Cir. 1992.)

For example, individuals wanted for extradition will cite the need to consult with counsel, gather evidence, and confer with witnesses in preparation for their hearing as reasons supporting a "special circumstances" finding.  However, these needs are "important" but "not extraordinary," since "all incarcerated defendants need to do these things."  *United States v. Smyth*, 976 F.2d 1535, 1535–36 (9th Cir. 1992); *see also Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir. 1991) (need to assist in preparation of defense insufficient to justify release).  Other factors that do not amount to "special circumstances" include:  (1) an unblemished record and the ability to post a significant bond; (2) the fugitive being a highly trained doctor available to administer care to the public; (3) the discomfort of sitting in jail; (4) the need to consult with one's attorney about pending civil litigation, the present extradition hearing, and severe financial and emotional hardships; (5) advanced age or infirmity; (6) the need for a special diet; (7) no credit for time served being granted; (8) financial or family hardship; or (9) the complicated nature of extradition proceedings.  *Kirby*, 106 F.3d at 863; *Russell*, 805 F.2d at 1217; *Molnar*, 182 F. Supp.2d at 688.

///

### D. Bail Should Not Be Granted in this Case

In this matter, the Government of Germany wants Azizi extradited in order to face multiple pending charges related to tax evasion in Germany. Azizi is a citizen of Afghanistan who was residing in Dubai at the time of his arrest. Unlike similar domestic criminal prosecutions, there is a potential greater harm if Azizi flees before his extradition hearing can be held in the U.S. Azizi's flight would defeat Germany's ability to enforce its laws, potentially subject the United States to embarrassment, and damage our foreign policy interests by rendering us unable to meet our treaty obligation to extradite him to Germany. *See, e.g., Wright v. Henkel*, 190 U.S. at 62; *In re Klein*, 46 F.2d 85, 85 (S.D.N.Y. 1930) (noting the "grave risk of frustrating the efforts of the executive branch of the government to fulfill treaty obligations.")

### CONCLUSION

For all of the reasons set forth above, the United States will respectfully request that this Court deny a motion made by Azizi for release.

DATED: April 1, 2014

Respectfully submitted,

MELINDA HAAG
United States Attorney

/S/

JOHN N. GLANG
Assistant United States Attorney